**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

Cathy Howard and Brenda Parsons, *et al.*,

Plaintiffs,

v.

ADS ALLIANCE DATA SYSTEMS, INC.,

Defendant.

Case No. 2:20-cv-02152-MHW-KAJ

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FLSA SETTLEMENT**

**TO THE HONORABLE MICHAEL H. WATSON:**

Plaintiffs—Cathy Howard and Brenda Parsons—individually and on behalf of the Ohio Settlement Class Members and FLSA Collective members, respectively (collectively, "Plaintiffs"), respectfully move this Court to approve the Third Amended Joint Stipulation of Settlement and Release resolving the claims at issue on a representative basis, pursuant to Federal Rule of Civil Procedure 23(e) and the provisions of the Fair Labor Standards Act ("FLSA"). Defendant, Bread Financial Payments, Inc., formerly known and named in this Action as ADS Alliance Data Systems, Inc. ("Defendant" or "ADS") does not oppose this Motion.

Plaintiffs and Defendant previously moved this Court for an Order certifying, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) with respect to the class defined below.

> All employees who are current and former hourly Care Center employees and Work at Home Care Center employees who were employed by Defendant in Ohio for a period of more than thirty days and whose job it was to interact with customers via the telephone and/or the computer from April 29, 2018 through the final disposition of this matter. The Ohio Settlement Class shall not include anyone who has already opted into the Fair Labor Standards Act collective action in *Tammy Stephens, et al. v. ADS Alliance Data Systems, Inc.*, Case No. 2:20-cv-02152-MHW-K.AJ. The Ohio Settlement Class Participants, as finally approved by the Court and subject to the final judgment entered in this Action, shall not include anyone who has timely and validly opted out of the Rule 23 Ohio class settlement.

*See* Doc # 141, PAGEID # 1774.

On August 28, 2023, this Court granted the motion for preliminary approval (Doc # 141), ordering, *inter alia*:

- The above-defined settlement class would be certified, for settlement purposes only, pursuant to FED. R. CIV. P. 23(a) and 23(b)(3);
- Cathy Howard was appointed as Representative Plaintiff for the Ohio Settlement Class for settlement purposes only.
- The Court appointed Anderson Alexander, PLLC and Barkan Meizlish DeRose, Cox LLP as Class Counsel for purposes of this Settlement.
- The Court preliminarily approved the settlement of claims set forth in the Third Amended Joint Stipulation of Settlement and Release ("the Agreement" at Doc # 140-1), finding the terms of the Agreement "appear[ed] to be fair, reasonable, and adequate such that it will be likely to be able to finally approve the Settlement Agreement under Fed. R. Civ. P. 23(e)(2) . . . ." Doc # 141, PAGEID # 1771.
- The Court approved the issuance of the Notice of Class Action Settlement and Claim Form, attached as Exhibits B and D to the Agreement according to the terms specified by the Parties.

- The Court set this matter for a Fairness Hearing, to be held on January 20, 2024, at which the Court is to offer final approval of the Agreement and Settlement.

The Class Representatives now request that, pursuant to the schedule set by the Court in its August 28, 2023 Order preliminarily approving settlement, and in light of the facts and legal arguments articulated in the attached Memorandum in Support, that the Court issue an Order finally certifying the requested settlement class and approving the Settlement pursuant to Federal Rule of Civil Procedure 23(e) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19.

A Memorandum in Support of this Motion is attached hereto.

Date: January 10, 2024

Respectfully submitted,

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 005214)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Ste. 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Fax: (614) 744-2300
Email: bderose@barkanmeizlish.com

*/s/ Clif Alexander*
Clif Alexander (Admitted Pro Hac Vice)
Texas Bar No. 24064805
Austin W. Anderson (Admitted Pro Hac Vice)
Texas Bar No. 24045189
Lauren E. Braddy (Admitted Pro Hac Vice)
Texas Bar No. 24071993
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd, Ste. 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
Email: clif@a2xlaw.com
austin@a2xlaw.com
lauren@a2xlaw.com

*Attorneys for Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

Cathy Howard and Brenda Parsons, *et al.*,

Plaintiffs,

v.

ADS ALLIANCE DATA SYSTEMS, INC.,

Defendant.

Case No. 2:20-cv-02152-MHW-KAJ

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FLSA SETTLEMENT**

## I. INTRODUCTION

Plaintiffs filed this hybrid class/collective action in the Southern District of Ohio on behalf of customer service representatives working in its Defendant Bread Financial Payments, Inc., formerly known and named in this Action as Defendant ADS Alliance Data Systems, Inc.'s ("Defendant" or "ADS") call centers, nationwide. Doc. # 1. In the Action, Plaintiffs alleged that they were not paid for all hours worked—specifically, they alleged they were not paid for their initial start-up activities performed at the beginning of their shifts.

The Parties stipulated to the conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) and agreed on the form and content of the notice to be sent to the Putative Collective Members. *See* Doc # 47. This Court granted the stipulation and authorized the issuance of notice as agreed by the Parties. *See* Doc # 48. By the close of the opt-in period, 789 individuals filed their Consent to Join this Action and have not been otherwise removed from participation in the collective. *See* Doc # 140-1, PageID # 1757. After the close of the opt-in period, the Parties agreed to pursue resolution, engaged in limited discovery, took the depositions of the Parties, and exchanged other necessary data to allow each party to evaluate the value of the representative claims at issue.

The Parties participated in two formal mediations to facilitate the settlement before this Court. The first mediation took place October 21, 2021, with experienced wage and hour mediator, Michael Ungar. During that first mediation the Parties reached a resolution and for which they requested preliminary approval. *See* Doc # 118. This Court identified certain problematic issues with the originally negotiated settlement agreement and denied the Parties' motion. *See* Doc # 120. Although the Parties initially attempted to resolve the remaining issues themselves, they determined a second formal in-person mediation would be helpful to assist them renegotiate certain terms of the agreement.

On January 19, 2023, the Parties mediated this case again before a court-appointed mediator and reached an agreement that further aligned with the direction provided by this Court. *See id.* However, due to the complexities inherent in hybrid class/collective actions like this one, the amended agreement was not without defect. *See* Doc # 124. After further conferences between themselves and the court-appointed mediator, the Parties further revised the settlement documents (and the pleadings) to ensure that the Agreement before this Court satisfies all the requirements of the FLSA and Federal Rule of Civil Procedure 23, and is fair, reasonable, and adequate. The Agreement is the product of repeated arm's-length negotiations between the Parties under the direction of two separate mediators and is a fair, reasonable, and adequate resolution of the claims in this matter.

## II. SUMMARY OF SETTLEMENT TERMS

The Agreement creates a Total Settlement Fund of $442,000.00 to resolve the class and collective claims before the Court. Included in that gross amount is $147,333.33 for attorneys' fees[1] (1/3 of the Total Settlement Fund) and reimbursement for litigation expenses, total service awards of $7,000.00 to be divided equally between Plaintiff Howard as the Class Representative, and Plaintiff

[1] Class Counsel will file a separate motion addressing the requested fees and costs.

Parsons as the Collective Representative, and administrative expenses totaling $50,000.00. *See* Declaration of Makenna Snow of ILYM Group, Inc., attached as Exhibit A, at ¶ 15.

The Agreement provides compensation for the FLSA Collective Members and Ohio Settlement Class Members. The individual settlement amounts are calculated on a *pro rata* basis based on the individual's share of the total aggregate workweeks during the applicable Calculation Period ("Individual Payment").[2] The Individual Payments are then divided in half, into wage and non-wage damages. FLSA Collective Members, by virtue of filing their written consent form during the opt-in period, received 100% of their allocated Individual Payment. Ohio Settlement Class Members received the portion of their Individual Payment allocated to wages automatically, and receive the non-wage portion of their Individual Payment by returning the Claim Form according to the instructions provided with the Notice of Class Action Settlement ("Notice") sent to them.

The FLSA Collective Members and those Ohio Participating Settlement Class Members who returned their Claim form will receive 100% of their allocated Individual Payment and will release their wage claims under the FLSA and Ohio state wage and hour law. *See* Doc 140, PageID # 1760-61. Those Ohio Participating Settlement Class Members who do *not* return their Claim form will receive only fifty percent (50%) of their Individual Payment (portion of their Individual Payment allocated to wages), but will release only their Ohio state wage claims.[3]

Subject to final approval, ILYM Group, Inc. ("ILYM") as the Settlement Administrator will mail the Individual Payments to the FLSA Collective Members and Ohio Participating Settlement

---

[2] The "Calculation Period" for the Individual Payments shall be April 29, 2018 to present for payments made to Ohio Settlement Class Participants, and April 29, 2017 to present for payments made to FLSA Opt-In Plaintiffs.

[3] The remaining portion of the Individual Payments for those Class Members who do not return a Claim Form (the non-wage portion of their Individual Payment) will revert to Defendant. Doc # 140, PageID # 1760.

Class Members. *Id.* Doc 140 at PageID # 1764–65. ILYM will also perform all necessary tax-reporting tasks associated with the administration of the Agreement.

## III. EFFECTIVENESS OF NOTICE AND CLASS RESPONSE TO NOTICE OF SETTLEMENT

In granting preliminary approval, this Court approved the Notice and the protocol for distribution as consistent with Rule 23(c)(2)(B) and due process.[4] Doc # 141. This Court approved ILYM to serve as the third-party administrator for the settlement class.[5] The 45-day notice period began on September 27, 2023, when ILYM mailed 4,256 court-approved Notices to the Ohio Class Members.[6] *See* Exhibit A, ¶ 8. A breakdown of the notice process and responses from the class members is as follows:

| Total Class/Collective Members | 4256 | 100.00% |
|---|---|---|
| Notices Successfully Mailed | 4,171 | 98.00% |
| Opt-Out Requests Received | 2 | 0.0005% |
| Objections Received | 0 | 0.00% |
| Claim Forms Received* | 114 | 3.26% |

*See* Exhibit A, ¶¶ 7–13.[7]

The class notice advised that they could submit an exclusion and/or objection to this Court and included the November 11, 2023, deadline. *Id.* As indicated above, no objections have been filed

4 After preliminary approval and absent inadequacies observed during the notice process itself, Rule 23(c)(2)(B) is satisfied. *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 660–61 (N.D. Ohio 2023) (citing *Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020)).

5 *See* Doc # 141.

6 After the initial mailing, ILYM re-mailed the notice forms that were otherwise returned as undeliverable. *See* Exhibit A, ¶ 8.

7 The percentage of Claim Forms received reflects only the number of Ohio Class Members who received the Notice.

and only two class members chose to opt-out of the settlement agreement by the November 11, 2023, deadline. *Id.* ¶ 11. *See id.* To date, there is over 98% participation by the settlement class.[8]

## IV. LEGAL ANALYSIS SUPPORTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Courts typically use a three-step procedure for approving settlements. *See Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011); *see also* FED. R. CIV. P. 23(d). At the first step, the Court determines whether to preliminarily approve the settlement. *See id.* Next, notice of the settlement is sent to interested persons. *See id.* Finally, after holding a fairness hearing, the Court must decide whether to finalize its approval of the settlement. *See id.* The parties are at the third step of the approval process.

### A. SETTLEMENT OF CLASS ACTION CLAIMS IS FAVORED.

As an initial matter, it is important to note the strong federal policy encouraging settlement of class actions. *See In re Broadwing, Inc. ERISA Litig.*, 252 F. R.D. 369, 371–72 (S.D. Ohio 2006); *see also UAW, et al. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979); *Airline Stewards and Stewardesses Association v. American Airlines, Inc.,* 573 F.2d 960, 963 (7th Cir. 1978). The district court's role in evaluating a proposed settlement is to ensure that the that the agreement is not a product of fraud or collusion and that the settlement, taken as a whole, is fair, reasonable, and adequate. *See Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615 (9th Cir. 1982); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). If the Court finds that the settlement is fair, reasonable, and adequate, approval of the settlement is appropriate. *See In re Broadwing, Inc. ERISA Litig.*, 252 F. R.D. at 381–82.

---

[8] *See McKnight*, 655 F. Supp. 3d at 661 (favorably noting that 98% of the class received notice in determining Rule 23's due process concerns were satisfied)

### B. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

"Under Rule 23(e)(2), a court may approve a proposed class settlement only [ ] after considering whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposal treats class members equitably relative to each other."[9] *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 661 (N.D. Ohio 2023) (quoting FED. R. CIV. P. 23(e)(2)(A)–(D)) (internal citations omitted). In the end, the Court's determinations are no more than "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *City of Detroit v. Grinnell*, 495 F.2d 448, 468 (2d Cir. 1974)).

#### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class.

Rule 23(e)(2)(A) requires a court to consider the "actual performance" of class representatives and counsel. *See also* FED. R. CIV. P. 23(e) advisory committee's note to 2018 amendment. This factor is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." 4 Newberg and Rubenstein on Class Actions § 13:49 (6th ed.)

Here, Plaintiff Howard and Class Counsel have diligently represented the interests of the Ohio Class Members. Class Counsel is well-versed in litigating complex representative actions such as this one. *See* Declaration of Clif Alexander, attached as Exhibit B. In fact, Class Counsel specializes in representing individual workers across the United States in class and collective actions according to state and federal wage and hour law. *See id.*

---

[9] Prior to the 2018 amendments to Rule 23(e)(2), courts in the Sixth Circuit applied a six-factor test to determine when a class action settlement was fair, reasonable, and adequate. *See UAW*, 497 F.3d at 631. The 2018 amendment, however "directs the parties to present the settlement to the court in terms of a shorter list of core concerns[ ]" set forth in Rule 23(e)(2). *See McKnight,* 655 F. Supp. 3d at 661.

Class Counsel strategically positioned the case for settlement on a class-wide basis and successfully negotiated a settlement agreement that provides for meaningful compensation to the class members. In doing so, Class Counsel engaged in limited discovery that included written discovery and party depositions and reviewed critical documents and data. This work allowed them to evaluate the claims at issue and create a realistic damage model from which they could meaningfully negotiate. Class Counsel engaged in settlement negotiations both informally, and through two formal in-person mediations. Ultimately, Class Counsel recovered $442,000.00 for Plaintiffs, the Ohio Class Members, and the FLSA Collective Members.

Likewise, Plaintiff Howard provided invaluable assistance in taking a lead role in the litigation by bringing the action in her name, through her representative capacity. Plaintiff Howard was willing to withdraw her FLSA Consent Form to ensure that there were no barriers to her representation of the Ohio Class. Plaintiff Howard significantly aided the litigation by consulting with Class Counsel wherein she provided Class Counsel with important information relevant to the claims and defenses at issue, testified under oath, and generally made herself available on behalf of the Class. Without the aid and assistance of Plaintiff Howard, the Agreement before the Court would not likely exist. Accordingly, this factor favors approval.

**2. The Agreement Was Negotiated at Arms' Length.**

Rule 23(e)(2)(B) requires the Parties to negotiate the settlement at arm's length. FED. R. CIV. P. 23(e)(2)(B). "This inquiry aims to root out . . . 'collusive settlements.'" 4 Newberg and Rubenstein on Class Actions § 13:50 (6th ed.); *see also UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Ball v. Kasich*, No. 2:16-CV-282, 2020 WL 1969289, at *6 (S.D. Ohio Apr. 24, 2020) (quoting *Stanley v. Turner Oil & Gas Properties, Inc.*, Case No. 2:16-cv-386, 2018 WL 2928028, at *5 (S.D. Ohio June 12, 2018)); *see also Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) (" '[T]he courts respect the

integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.'")

In this case, the record contains no evidence of collusion. At each stage of the litigation, the parties engaged in an adversarial bargaining process and participated in two in-person mediations (one of which was facilitated by the Court). Here, the Agreement was negotiated in an adversarial manner after substantial factual investigation and intensive legal analysis. The proposed settlement negotiations included several exchanges of documents, two mediations by an experienced private wage and hour mediator, Michael Ungar, and the skilled mediator appointed by the Court, countless rounds of correspondence both before and after the formal mediations, and hours of post-mediation telephonic conferences. *See* Exhibit B. Both parties to the negotiations vigorously attempted to secure the most desirable conclusion for their respective clients. Settlement proposal documents were exchanged between the parties on numerous as they worked to resolve the key issues relative to the proposed Agreement across all of its iterations. This process resulted in a fair, reasonable and adequate Agreement. See *Ball*, 2020 WL 1969289, at *6.

**3. The Relief Provided Is Adequate**

In this case, there are disputed questions of liability and damages that could negatively affect the ability of the Rule 23 Class to succeed on the merits and thus obtain any relief, at all.

Legally, Plaintiffs would be required to show that their start-up activities constituted compensable time under the FLSA.

> The Supreme Court has defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). This definition includes work performed off-duty. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (holding that employees must be compensated for activities performed for the employer before or after a regular work shift if the activities are an "integral and indispensable" part of the employees' principal activities). The definition even applies when the work is not requested but is "suffered or permitted." 29 C.F.R. § 785.11. "If the employer knows

> or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 785.12.

*Lewallen v. Scott Cty., Tenn.*, 724 F. Supp. 2d 893, 896 (E.D. Tenn. 2010). Defendant maintains that Plaintiffs and the Ohio Class Members were at all times paid according to state and federal wage and hour law. While Plaintiffs remain confident that they could prevail on the initial question of liability, the result is far from certain.

Should Plaintiffs establish that their initial start-up time was compensable, Plaintiffs would still be required to show, through testimony and documentary evidence, how many hours they worked without pay to establish their damages. The outstanding required discovery could be both extensive and expensive, and, as applied to the class, would involve considerable time costing both parties hundreds of thousands of dollars.

Here, under the terms of the Agreement, the Ohio Class Members are to be paid based on formula described above wherein each Class Member will be entitled to receive their *pro rata* share of the Net Settlement Amount based on the number of wees they worked during the respective limitations period(s). This equates to an average payment of $32.36, with the estimated highest gross payment being $167.24. *See* Exhibit A, ¶ 16. These amounts (and the calculations used to reach them) are fair considering the legal hurdles should the parties continue to litigate on the merits. Instead, the Agreement provides for a meaningful recovery for the Ohio Settlement Class Members now, instead of some future uncertain date. This factor thus favors approval.

**4. The Agreement Treats Class Members Equitably Relative to Each Other.**

This Court is also tasked with determining whether the settlement agreement treats class members equitably. *See* FED. R. CIV. P. 23(e)(2)(D). This factor "ensure[s] that similarly situated class members are treated similarly." 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed.). This standard is met—all Ohio Class Members' claims are subject to the same *pro rata* calculation and had

the same opportunity to fully participate in this class action settlement.[10] The calculation approach adopted by the Parties and preliminarily approved by the Court ensures that all damage calculations are made relative to time worked during the respective statute of limitations. *See* FED. R. CIV. P. 23(e) advisory committee's note to 2018 amendment; *York v. Velox Express, Inc.*, No. 3:19-CV-00092-CHL, 2022 WL 20804127, at *6 (W.D. Ky. Mar. 25, 2022)("The Court finds that the proposed distribution is equitable because "it apportions funds based on the circumstances of each member's employment by Defendants."). Because all Ohio Class Members are subject to the same damage formula for calculating their Individual Payments, this factor favors approval.

### C. THE REQUESTED SERVICE AWARDS ARE REASONABLE

As the Supreme Court recently recognized, a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agrigtech, Inc. v. Resh*, 584 U.S. ___, ___, 138 S.Ct. 1800, 1811, n.7 (2018). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) *rev'd*, 24 F. App'x 520 (6th Cir. 2001). Such awards are not uncommon. *See York*, 2022 WL 20804127, at *6 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)). Service awards provide compensation for time, effort, risk and service and does not improperly grant preferential treatment to class representatives. Moreover, incentive awards are appropriate in wage and hour cases because a named plaintiff's efforts "further[ ] the important public policies underlying the Fair Labor Standards Act." *Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2018 WL 4776977, at *8 (S.D. Ohio Oct. 3, 2018).

---

[10] Each Ohio Class Member had an opportunity to submit a Claim Form to receive 100% (the wage and non-wage portions) of their calculated Individual Payment. Ohio Class Members who failed to return a Claim Form still receive the part of their Individual Payment classified as their wage portion, or 50% of their Individual Payment.

Plaintiff Howard is seeking a service award of $3,500.00 for her services to the Ohio Class Members and Plaintiff Parsons is seeking a service award of the same amount for her services to the FLSA Collective Members. In total, Plaintiffs seek approval for $7,000.00 of the Total Settlement Amount to be allocated to service awards for the Representative Plaintiffs in this action. Not only were the Representative Plaintiffs willing to place their names publicly on the pleadings and thus suffer the possibility of reputational harm, they also maintained an active role in the litigation. *See* Exhibit B. Both Plaintiff Howard and Plaintiff Parsons provided deposition testimony in support of their claims and maintained an open line of communication with Class Counsel. The Agreement before this Court would not be possible without their efforts on behalf of the Class and Collective. *Id.*

These awards are reasonable and are well within the amounts approved by other courts in the Sixth Circuit. *See, Swigart*, 2014 WL 3447947, at *7 (describing two $10,000 awards as "modest" and citing awards ranging from $4,000 to $12,000); *Dillworth*, 2010 WL 776933, at *7 (approving services awards of $6,000 and $4,000 for the representative plaintiffs); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving a service award of $3,500 to be paid to the representative plaintiff). Without the Representative Plaintiffs' participation, this hybrid collective/class action settlement would not have occurred.

### D. CLASS CERTIFICATION IS APPROPRIATE

As detailed in the Parties' Second Amended Joint Motion for Preliminary Settlement Approval (Doc # 128), certification of a class action for settlement purposes is appropriate. *See* FED. R. CIV. P. 23(e). Those arguments remain unchanged, and Plaintiffs incorporate them herein.

### E. CLASS ADMINISTRATION COSTS ARE REASONABLE

ILYM was engaged by Class Counsel and Counsel for the Defendant (collectively the "Parties") to provide settlement administration services in this matter. *See* Exhibit A at ⁋ 3. ILYM's total fees and costs for services rendered in the administration of this settlement, and those anticipated

to be rendered after final approval, total $50,000.00. *Id.* at ¶ 17. These costs are reasonable and necessary, and include payment for all tasks outlined in Ms. Snow's Declaration.

## V. LEGAL ANALYSIS SUPPORTING APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

FLSA settlement agreements generally require approval by a court or the Department of Labor ("DOL"). *See* 29 U.S.C. § 216; *Dewald v. Time Warner Cable*, Nos. 16-cv-1129, 17-cv-00631, 2021 U.S. Dist. LEXIS 32459, at *7–8 (S.D. Ohio Feb. 16, 2021). However, the Sixth Circuit "has not definitely ruled on this issue"—that is, whether FLSA settlement approval is necessary. *See Macknight v. Healthcare*, No. 2:20-cv-4508, 2021 U.S. Dist. LEXIS 227262, at *2 (S.D. Ohio March 4, 2021) (citation omitted). Notwithstanding, district courts regularly require approval of FLSA settlements and will approve such settlements where: (i) the settlement resolves a *bona fide* dispute under the FLSA; and (ii) the settlement is "fair, reasonable, and adequate." *Id.*

As discussed above in the context of Rule 23(e), the agreement is fair, reasonable, and adequate. *See supra* IV(B). The Agreement also provides for the resolution of a *bona fide* dispute between the Parties. There is substantial disagreement as to whether any FLSA Collective Member worked any compensable time for which he or she was not paid. Further, even assuming *arguendo* that the FLSA Collective Members performed compensable services for which they were not paid, there remains disagreement as to the amount of any unpaid time—and whether it accrued in a week in which the FLSA Collective Member worked more than forty (40) hours and was thus entitled to the protections of the Act.

Because the Agreement constitutes a fair, reasonable, and adequate resolution of a *bona fide* dispute under the FLSA, the Agreement should be approved.

## VI. CONCLUSION

Because the proposed Agreement is fair, adequate and reasonable, and likewise constitutes the fair, reasonable and adequate resolution of a *bona fide* dispute, the Court should GRANT Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Approval of FLSA Settlement. A proposed Order is attached for the Court's consideration as Exhibit C.

Date: January 10, 2024

Respectfully submitted,

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 005214)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Ste. 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Fax: (614) 744-2300
Email: bderose@barkanmeizlish.com

*/s/ Clif Alexander*
Clif Alexander (Admitted Pro Hac Vice)
Texas Bar No. 24064805
Austin W. Anderson (Admitted Pro Hac Vice)
Texas Bar No. 24045189
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd, Ste. 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
Email: clif@a2xlaw.com
austin@a2xlaw.com
lauren@a2xlaw.com

*Attorneys for Plaintiffs, the Ohio Class Member, and the FLSA Collective Members*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Ohio using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander