# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Tammy Stephens,

    Plaintiff,

    v.

ADS Alliance Data Systems, Inc.,

    Defendant.

Case No. 2:20-cv-2152

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Cathy Howard ("Howard") and Brenda Parsons ("Parsons" collectively with Howard "Plaintiffs") move for final approval of the parties' Rule 23 class action Settlement, the parties' settlement of Parsons's claims under the Fair Labor Standards Act ("FLSA"), and for an award of attorney's fees and service awards. ECF No. 144 & 145. ADS Alliance Data Systems, Inc. ("Defendant") does not oppose either motion. For the following reasons, Plaintiffs' motions are **GRANTED**.

## I. BACKGROUND

### A. Procedural History

Plaintiffs sued ADS Alliance Data Systems, Inc. ("Defendant") for unpaid overtime wages and other relief under the FLSA and analogous state laws. Third Am. Compl., ECF No. 130. Plaintiffs alleged that Defendant required her and similarly situated employees to perform "off the clock" work without pay, which resulted in unpaid overtime. *Id.*

After multiple rounds of mediation, the parties settled all the claims, with Parsons as the representative plaintiff for the FLSA collective and Howard as the representative plaintiff for the Rule 23 class. *See generally*, Mot., ECF No. 144.

As to the Rule 23 settlement, the parties moved for preliminary approval of their Settlement Agreement, which the Court granted. Order, ECF No. 141. The Court held a fairness hearing on January 24, 2024, and now turns to Plaintiffs' unopposed motions for final approval of the Rule 23 and FLSA settlements, and for an award of attorney's fees, costs, and service awards. ECF Nos. 144 & 145.

**B.    The Settlement Agreement**

The Settlement Agreement creates a $442,000.00 Settlement Fund for the benefit of the Rule 23 Class and FLSA collective. Settlement Agr. ¶ 26, 140. The Settlement Fund will cover settlement payments to Class Members, costs of notice to the Class and administration of the settlement, reimbursement of Class Counsel's reasonable costs and expenses, attorney's fees for Class Counsel, and service awards to named Plaintiffs. *See generally id.*

The Settlement Class is defined as follows:

[A]ll employees who are current and former hourly Care Center employees and Work at Home Care Center employees who were employed by Defendant in Ohio for a period of more than thirty days and whose job it was to interact with customers via the telephone and/or the computer from April 29, 2018 through the final disposition of this matter. The Ohio Settlement Class shall not include anyone who has already opted into the Fair Labor Standards Act collective action in *Tammy Stephens, et al. v. ADS Alliance Data Systems, Inc.*, Case No. 2:20-cv-02152-MHW-KAJ. The Ohio Settlement Class Participants, as finally approved by the Court and subject to the final

judgment entered in this Action, shall not include anyone who has timely and validly opted out of the Rule 23 Ohio class settlement.

*Id*. ¶ 7.  The parties represent that there are over 4,000 Class Members.  Mot., ECF No. 144.

## C.    Notice

The Court appointed ILYM Group, Inc. ("ILYM") to be the Settlement Administrator.  *See* Order 4, ECF No. 141.  ILYM was responsible for providing Notice to Class Members.  *See generally* Snow Decl., ECF No. 144-1.  ILYM reviewed the records provided by Class Counsel, obtained updated contact information for the Class Members, and sent the Notice via mail to 4,256 Class Members.  *Id*. ¶¶ 4–7.  Although over 200 notices initially came back as undeliverable, ILYM was ultimately able to send notices to all but 85 Class Members.  *Id*. ¶ 8–10.

## II.    APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT

To grant final approval of a settlement class, the Rule 23 requirements must be satisfied.  *See* Fed. R. Civ. P. 23.  The Court has already preliminarily approved the Class for settlement purposes, ECF No. 141, and now finds that the standards required for final approval are satisfied.

## A. Numerosity

To satisfy numerosity, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no strict numerical test for determining impracticability of joinder."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted).  Indeed, "[t]he

numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc., v. EEOC*, 446 U.S. 318, 330 (1980). Here, the Class contains over 4,000 members. Numerosity is satisfied because it would be impractical, if not impossible, to join all of these members into one action.

**B.    Commonality**

To establish commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the Class Members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation marks and citations omitted). The claims "must depend upon a common contention[,]" and "[t]hat common contention . . . must be of such a nature that is capable of class wide resolution—which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, the lawsuit raised numerous common questions including whether class members were subject to the same policy that required them to work off the clock. In addition, the Class Members have the same alleged injury: unpaid overtime. Accordingly, the commonality requirement is satisfied.

**C.    Typicality**

A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other Class

Members, and if his or her claims are based on the same legal theory." *Beattie*

*v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med.*

*Sys., Inc.*, 75 F.3d at 1082).  The typicality requirement "tend[s] to merge" with

the commonality requirement.  *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147,

157, n.13 (1982).

Here, the typicality element is satisfied because the Class claims are

based on the same legal theories and the same alleged conduct.

## D.    Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between

named parties and the class they seek to represent." *Amchem Products, Inc., v.*

*Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. 157–58).  To

determine the adequacy of representation requirement, a court must consider

two elements: (1) "the representative must have common interests with unnamed

members of the class"; and (2) "it must appear that the representative[] will

vigorously prosecute the interests of the class through qualified counsel." *Pelzer*

*v. Vassalle*, 655 F. App'x 352, 364 (6th Cir. 2016) (internal quotation marks and

citations omitted).

Here, Howard and the class members share common interests.  No

conflict exists between Howard and the class members she seeks to represent.

Also, Class Counsel have extensive experience in class action litigation and

corporate matters.  *See* Alexander Decl. ¶¶ 4–5, ECF No. 128-5; DeRose Decl.

¶ 5, ECF No. 128-6.  Thus, adequacy is met.

**E.      Rule 23(b) Requirements**

Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires a showing that common questions of fact or law predominate over any individual questions and that a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

**1.      Predominance**

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011) (citing *Beattie*, 511 F.3d at 564).

Predominance is satisfied here.  There is one set of core predominate facts and legal issues, including that all class members worked for Defendant, were paid by the hour, and were subject to the same policies.  Consequently, the alleged injuries to Class Members are of the same nature, and each class member would have experienced similar alleged underpayment by Defendant.  The Court therefore finds common questions predominate over individual issues in this case.

**2.      Superiority**

Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is "superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To make this decision, the Court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

Here, class treatment is superior to other available methods. The Class Members have little interest in individually controlling separate actions, as the amount of individual damages is likely to be small. "[S]mall awards weigh in favor of class suits." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) (citing cases). The Court is not aware of any litigation concerning this controversy that has already begun by or against the class members. It is desirable to concentrate the litigation in this forum as the parties and, to a lesser extent, the Court have already expended significant time and resources on this case. Last, the difficulties in managing a class action do not outweigh the benefits of certifying a class in this case. Accordingly, a class action is clearly the superior method of adjudicating this case.

For these reasons, the Class is **CERTIFIED** for purposes of the Settlement, and the Court **APPOINTS** Anderson Alexander, LLP and Barkan Meizlish DeRose Cox, LLP as Class Counsel.

### III. APPROVAL OF THE PROPOSED CLASS SETTLEMENT

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In making this determination, the Court considers the following factors:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (citation omitted). For the reasons that follow, the Court concludes that the Settlement is fair, adequate, and reasonable.

### A. The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the Settlement was the product of fraud or collusion. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary." (citation omitted)). Rather, the Settlement is the result of arm's-length negotiations and

two rounds of mediation.  The Court concludes that this factor favors approval of the Settlement.

**B.      Complexity, Expense, and Likely Duration of the Litigation**

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D. N.Y. 2000)).

Here, the parties have been litigating this case since 2020.  Absent a settlement, continued litigation of this case would have resulted in substantial additional time and effort spent preparing for litigation, including additional discovery, class certification, dispositive motions, trial preparation, and possible appeals.  Settling the case now saves time and money for the parties and the Court.

Accordingly, this factor weighs in favor of approving the Settlement.  It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

**C.      The Amount of Discovery Engaged in By the Parties**

To confirm that Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties.  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (citations

omitted).  "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," courts "should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."  *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (citation omitted).  In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties."  *Id.* (citing cases).

In this case, the parties engaged in both formal and informal discovery, including paper discovery and some depositions.  Thus, the parties had ample evidence with which to evaluate the strengths and weaknesses of their positions and determine that the Settlement is fair and reasonable under the circumstances.  The Court finds that both sides made well-informed decisions to enter into the Settlement.  This factor weighs in favor of approving the proposed Settlement.

**D.    The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a Settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."  *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, Howard alleges that Defendant required Class members to perform work off the clock, which resulted in unpaid overtime. Defendant unequivocally opposes all allegations. Among other issues, it could be difficult for Howard to prove that Defendant had a policy of requiring off-the-clock work. Indeed, counsel represent that Defendant had a policy *prohibiting* off-the-clock work. Accordingly, due to the existence of uncertainties inherent in their claims, Howard's likelihood of success on the merits of its claims remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement.

**E.    The Opinions of Class Counsel**

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *See, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *see also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in class action litigation and wage and hour claims. *See* Alexander Decl. ¶¶ 4–5, ECF No. 128-5; DeRose Decl. ¶ 5, ECF No. 128-6. Equipped with extensive experience, Class

Counsel have concluded that the Settlement is not only fair and reasonable but also confers meaningful benefits on the Settlement Class.  Alexander Decl. ¶ 18, ECF No. 128-5; DeRose Decl. ¶ 11, ECF No. 128-6.  The Court therefore finds that this factor favors approval of the proposed Settlement.

**F.      The Reaction of Absent Class Members**

The Court must also consider the reaction of the Class Members.  *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Individual notice packets were sent to 4,256 class members.  Snow Decl. ¶ 7, ECF No. 144-1.  Only 85 of those Class Members were unable to receive notice.  *Id.* at ¶ 10.  No Class Members objected, and only two Class Members opted out of the Settlement.  *Id.* at ¶¶ 11–12.  Thus, 0% of Class Members objected and 0.0005% opted out; both percentages are quite low and demonstrate that, as a whole, the Class supports the Settlement.  Mot. 8, ECF No. 144.  In sum, the overall positive response from the Class Members weighs in favor of approving the Settlement.

**G.      The Public Interest**

"Public policy generally favors settlement of class action lawsuits."  *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted).  In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expense in further litigation, and conserves judicial resources.  The Court therefore finds that this factor favors approving the Settlement.

In sum, after considering all of the relevant factors, the Court concludes that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).

## IV.   APPROVAL OF THE FLSA SETTLEMENT

"As a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court."  *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)).  To approve a settlement agreement, a court must conclude that it is a "fair, reasonable, and adequate" resolution of a bona fide legal dispute.  *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (discussing a class action settlement under Federal Rule of Civil Procedure 23); *see also Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016) (applying the same analysis to an FLSA settlement).  Factors relevant to this determination include: (1) "the risk of fraud or collusion behind the settlement"; (2) "the complexity, expense, and likely duration of the litigation"; (3) "the amount of discovery completed"; (4) "the likelihood of plaintiff's success on the merits"; and (5) "the public interest in settlement."  *Clevenger v. JMC Mech., Inc.*, No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015) (citation omitted).  "The court may choose to consider only factors that are relevant to the settlement at

hand and may weigh particular factors according to the demands of the case."
*Gentrup*, 2011 WL 2532922, at *3 (citation omitted).

After a careful review of the proposed settlement agreement, the Court
finds that the settlement agreement is a fair, reasonable, and adequate resolution
of a bona fide legal dispute between the parties.

There is a bona fide dispute in this case, as the parties dispute, *inter alia*,
whether collective members worked hours for which they were not paid. There is
no indication that the settlement was reached by anything other than arms' length
negotiations between counsel. The settlement will avoid expensive litigation for
both sides, including remaining discovery, dispositive motions, trial, and possible
appeals. Further, the parties represent that they engaged in substantial informal
discovery and, therefore, have had the opportunity to consider their respective
likelihoods of success.

The total settlement amount is $442,000.00. Settlement Agr. ¶ 26, ECF
No. 140. From this amount, each FLSA collective member will receive a pro rata
share of their total aggregate workweeks. *Id*. ¶ 28. The parties do not indicate
what percentage of the alleged unpaid wages and liquidated damages these
payments cover. However, a review of the filings in this case indicates that these
payments cover a fair and reasonable portion of the possible alleged damages.
Parsons will receive a $3,500.00 service award in addition to her individual
payment. *Id*. ¶ 31.

These payments are reasonable. *See Vigna*, 2016 WL 7034237, at \*2–4 (approving a settlement that represented approximately 55% of allegedly owed wages); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (observing that "[n]umerous courts" have found that service awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class").

In sum, the FLSA settlement is fair, reasonable, and adequate and, therefore, is **APPROVED**.

## V.   ATTORNEY'S FEES AND COSTS

### A.   Attorney's Fees

Class Counsel seeks an award of one-third of the total Settlement Fund in the amount of $147,333.33. Mot. for Attorney's Fees 1, ECF No. 145. Neither Defendant nor any Class Member has opposed this request.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the court must determine the

appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id.* Whichever method is used, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d. at 516. Second, the Court should consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g.*, *Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied (citation omitted)). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352 (internal quotation marks and citations omitted).

Under the circumstances of this specific case, particularly where neither Defendant nor any Class Member opposes the fee request and the Class has received a "substantial benefit," the Court concludes that all of these factors weigh in favor of approving an award of attorney's fees.

As to the first factor, the Court has already described at length the benefit conferred to the Class Members through Settlement. The total settlement amount is for $442,000.00; each class member received individual payments and avoided further litigation. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. Counsel's represented lodestar is over $255,000.000, which is almost $80,000.00 more than the requested fee. Thus, a cross-check using Class Counsel's lodestar amount weighs in favor of granting the requested fee award.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *See, e.g.*, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this have a "value to society more broadly, both as deterrents to unlawful behavior—particularly when

the individual injuries are too small to justify the time and expense of litigation—

and as private law enforcement regimes that free public sector resources."

*Gascho*, 822 F.3d at 287 (citing cases). Without a class action, the individual

plaintiffs would not have had a strong incentive to pursue recovery because any

monetary award would have been severely outweighed by the costs to litigate

their case.

The remaining two factors, the complexity of the litigation and the

professional skill and standing of the attorneys involved, also militate in favor of

granting the requested award. This is a complex case with nuanced issues and

significant litigation.

Class Counsel have extensive experience in class action litigation similar

to this action. *See* Alexander Decl. ¶¶ 4–5, ECF No. 128-5; DeRose Decl. ¶ 5,

ECF No. 128-6. As discussed above, the hours expended and time records

submitted by Class Counsel further underscore their competency and efficient

handling of this matter, favoring approval.

For these reasons, the Court **APPROVES** the fee award of $147,333.33 to

Class Counsel.

**B.      Settlement Administration Costs and Out-of-Pocket Expenses**

"Under the common fund doctrine, class counsel is entitled to

reimbursement of all reasonable out-of-pocket litigation expenses and costs in

the prosecution of claims and in obtaining settlement[.]" *In re Cardizem CD*

*Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). These costs include

"expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *Id.*

Class Counsel avers that out-of-pocket expenses, which currently amount to $12,257.58, were necessary and directly related to this litigation. Alexander 2024 Decl. ¶ 18, ECF No. 144-2. The Court finds that these costs are reasonable and necessary to litigate and settle this case and therefore **APPROVES** the request of $25,583.69 for out-of-pocket expenses.

## C. Class Representative Awards

Service awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix*, 322 F.3d at 897. Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement Agreement proposes to award Howard a service award of $3,500.00. Settlement Agr. ¶ 31, ECF No. 140. Howard assisted in the prosecuting and settling of the litigation, including communication with counsel and participating in discovery. *See* Mot. 9, ECF No. 128. In light of this service, the Court **APPROVES** the service award of $3,500.00 to Howard.

## VI. CONCLUSION

For these reasons, the Court **GRANTS** final approval of the Settlement.

The Court observes, however, that this settlement is an unusual one. The Court's approval of this settlement is limited to only the facts of this case and should not be viewed as a general approval of "hybrid" Rule 23 and FLSA settlements, let alone approval of second-chance classes or tiered recovery not based on differences in damages.

The Court enters final judgment as follows:

1.  The Court incorporates by reference the definitions set forth in the Agreement.

2.  This Court has personal jurisdiction over all Representative Plaintiffs, FLSA Collective Members, and Ohio Class Members, and has subject matter jurisdiction over all claims asserted in the Third Amended Collective/Class Action Complaint. In addition, venue in the Southern District of Ohio is proper.

3.  The Agreement is approved as fair, reasonable, and adequate, consistent and in compliance with the applicable provisions of the United States Constitution and the Federal Rules of Civil Procedure, and in the best interest of the Class. The Agreement is binding on, and will have res judicata and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Agreement and the Release maintained either by or on behalf of Representative Plaintiffs and all other Ohio Settlement Class Members and FLSA Collective Members, as well as their past, current, and future heirs, representatives, executors, administrators, attorneys, predecessors, successors, and assigns.

4.    The Notice of Class Action Settlement provided pursuant to the Agreement and the Order Granting Preliminary Approval of Class Settlement:

(a) Constituted the best practicable notice, under the circumstances;

(b) Constituted notice that was reasonably calculated to apprise the Ohio Class Members of the pendency of this lawsuit, their right to object or exclude themselves from the proposed settlement, and to appear at the Fairness Hearing;

(c) Was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and

(d) Met all applicable requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution because it stated in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the Court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

5.    For settlement purposes only, that the Class satisfies the applicable standards for certification under Fed. R. Civ. P. 23(a) and (b)(3).

6.    The Agreement in this action warrants final approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure because it is fair, adequate, and reasonable to those it affects, and resulted from vigorously contested

litigation, including meaningful discovery, motion practice, and extensive good-faith arm's length negotiations between the parties.

7. The Agreement in this action warrants approval pursuant to 29 U.S.C. § 216(b) because it constitutes the fair, adequate, and reasonable resolution of a bona fide dispute, and is approved under the FLSA.

9. Cathy Howard is the Representative Plaintiff for the Ohio Class Members and Brenda Parsons is the Representative Plaintiff for the FLSA Collective Members, and they will fairly and adequately represent their respective Class/Collective Members.

10. Class Counsel and the Representative Plaintiffs adequately represented the Class and Collective for purposes of entering into and implementing the settlement.

13. Class Counsel's requested fees and expenses under the Agreement, and as set out in their Motion for Fees and Costs, ECF No. 145, are fair and were reasonably and necessarily incurred.

14. The Service Awards for the Representative Plaintiffs, as set forth in the Agreement, are approved, and the Representative Plaintiffs shall each be entitled to receive $3,500.00 to compensate them for their unique services in initiating and/or maintaining this litigation.

15. ILYM Group, Inc.'s expenses for administering the settlement, including the distribution of Notice and the settlement funds, are reasonable and are approved.

16.     Nothing relating to this Order, or any communications, papers, or orders related to the Agreement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or the Defendant Releasees of any liability, culpability, negligence, or wrongdoing toward the Representative Plaintiffs, Collective Members, Class Members, or any other person, or that class action certification is appropriate in this or any other matter.  There has been no determination by any Court as to the merits of the claims asserted by Representative Plaintiffs against Defendant or as to whether a class should be certified, other than for settlement purposes only.  Furthermore, nothing in the parties' Agreement shall be cited to as, construed to be, admissible as, or considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by Defendant.

17.     In consideration of the consideration paid under the Agreement, and for other good and valuable consideration, each of Ohio Class Members and FLSA Collective Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all of their respective Released Claims against Defendant in accordance with the terms of the Agreement.

18.     In the event that the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, nunc pro tunc, and without prejudice to the status quo ante rights of Plaintiffs, Collective Members, Class Members, and Defendant.

19.     All Ohio Class Members and/or their representatives who have not been excluded from the Class are permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from the assertion of any Released Claim in any other lawsuit (including putative class action lawsuits), arbitration, administrative, regulatory, or other proceeding, order, or cause of action in law or equity in any jurisdiction.

20.     The Court retains jurisdiction over all proceedings arising out of or related to the Agreement.

21.     This lawsuit (including all individual claims, Collective claims, and Class claims presented thereby) is dismissed on the merits and with prejudice, without fees or costs to any party, except as provided above and/or in the Agreement.

The Clerk shall close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**